UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TAUNYA JONES, | ) | CIV. 11-4117-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART AND |
| vs. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| BRACCO LIMITED | ) | JUDGMENT |
| PARTNERSHIP, a South Dakota | ) | |
| limited partnership, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Taunya Jones, filed suit against defendant, Bracco Limited

Partnership, for alleged violations of the Family and Medical Leave Act (FMLA),

the Americans with Disabilities Act (ADA), and state-law claims of wrongful

termination and intentional infliction of emotional distress. Bracco moves for

summary judgment on all claims. Jones resists the motion. The motion is

granted in part and denied in part.

## BACKGROUND

The facts, taken in the light most favorable to Jones, the nonmoving

party, are as follows:

Jones began working for Bracco as a server in 2006. She was promoted

to the position of Director of Operations in the fall of 2007 and also performed

many of the tasks associated with dining room manager. After this promotion,

Jones began working approximately 55-60 hours per week and at times over 100 hours in a given week. Jones was making a salary of $50,000 per year.

Jones began experiencing health problems in June of 2009. Her symptoms included heart palpitations, neck and back pain, and headaches. Jones's treating chiropractor, Dr. Graue, drafted a letter suggesting that Jones's work duties may be contributing to the severity of her symptoms and recommending reduced hours to alleviate said symptoms. Jones notified Bracco management, i.e., Rick Thompson and Kyle Adams, that she had been put on medication for anxiety and referenced Dr. Graue's letter that indicated stress from her job may be affecting her health. No changes were made in Jones's work schedule or responsibilities.

As the summer progressed, Jones's symptoms became worse.[1] She began feeling sensations that her brain was vibrating, numbness on the side of her face, shooting pains through her eyes, constant headaches, muscle spasms, and a feeling that she might pass out at any time. Jones complained about some of these symptoms to Bracco management. Indeed, on August 12, 2009, Jones emailed Thompson, Adams, and Kori Oberembt, another Bracco employee, informing them that she needed a two-week medical absence because of her brain tremors, faintness, and pain on the side of her head.

_____

[1] Jones was diagnosed with trigeminal neuralgia by Dr. Anis on September 1, 2009.

Ultimately, Jones did not take time off at that point even though Bracco did not resist Jones's request.

On August 26, 2009, Jones experienced an incident of faintness that led to Adams recommending that she go to the emergency room. Jones went to the emergency room and was treated by Dr. Simpkins. Dr. Simpkins drafted a letter that evening indicating that Jones should not return to work until September 1, 2009, assuming she was cleared by neurology. Jones's husband, Todd, delivered Dr. Simpkins's letter to Thompson at Bracco that evening, August 26, 2009.

On August 28, 2009, Jones received a phone call from Thompson, notifying her that she would be put on medical leave for one month and then be discharged. Later, Bracco sent a letter to Jones, which mirrored the phone conversation and requested that she turn in all of her materials and keys.

Jones was not given a reason for her termination in either the phone call or letter. Bracco managers rarely, if ever, discussed performance issues with Jones. Jones was never written up for any job performance issues and her personnel file is void of any reference to unsatisfactory performance. Moreover, Bracco did not follow its three-strike disciplinary program that is referenced in its employee handbook.

Bracco claims that Jones's discharge was the result of her deteriorated job performance. Bracco asserts that Jones was discharged because she failed

to adequately manage and train staff, ensure that menus and training manuals were updated, attend meetings, and maintain a clean restaurant. Bracco also claims that Jones was unwilling to work the hours her position demanded. Jones denies all of these assertions.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to

the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules[.]" *Celotex Corp.*, 477 U.S. at 327. Since summary judgment is a useful pretrial tool in all civil cases, including ones alleging discrimination, summary judgment motions involving discrimination are treated no differently than summary judgment motions involving "other ultimate questions of fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

## ANALYSIS

### I. Family and Medical Leave Act

The FMLA provides that an eligible employee may take a total of twelve weeks of unpaid leave during any twelve-month period if "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 859 (8th Cir. 2000) (reasoning that the employee must meet both conditions). A serious health condition is an illness, injury, impairment, or physical or mental condition that involves either inpatient care at a medical facility or continuing treatment by a health care provider. 29 U.S.C. §§ 2611(11)(A), (B). Continuing treatment is defined as a

"period of incapacity of more than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition." 29 C.F.R. § 825.115(a). A subsequent treatment can be a single occasion that results in a regimen of continuing treatment under a health care provider's supervision. 29 C.F.R. § 825.115(a)(2). Congress intended the concept of a "serious health condition" to be construed broadly to effect FMLA's remedial purposes. *Stekloff*, 218 F.3d at 862.

Bracco does not claim that Jones did not have a serious health condition. Thus, for purposes of this motion, the court will assume without deciding that Jones's condition at the relevant time qualified as a serious health condition under the FMLA. Bracco instead argues that Jones failed to show that her health condition rendered her unable to perform the functions of her position.

Under the FMLA, Jones must show that she is unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). An employee fulfills this requirement when she cannot work or cannot perform any one of her position's essential functions within the meaning of the ADA. 29 C.F.R. § 825.123(a). If an employee is absent from work to receive medical treatment for a serious medical condition, she is considered unable to perform the essential functions of her position during her absence. *Id.* The inquiry only focuses on the employee's current job with her current employer at the time of the FMLA absence. *Stekloff*, 218 F.3d at 862.

While at work on August 26, 2009, Jones began feeling lightheaded and nearly fainted. Adams recommended that Jones go to the emergency room after observing her condition. An emergency room physician prepared a letter that indicated Jones should not return to work until September 1, 2009, assuming she was "cleared by neurology." Docket 28 at ¶ 18. It is apparent that Jones would have been absent from work for at least five days and was to be treated by neurology between August 26 and September 1, assuming the decision to terminate her had not occurred on August 28, 2009. An absence from work to receive medical treatment satisfies the "unable to perform the essential functions of her position" prong under the FMLA. 29 C.F.R. § 825.123(a). Therefore, viewing the evidence in the light most favorable to Jones, she has established, as a threshold matter, that she was entitled to protection under the FMLA.

Employees have two claims against employers under the FMLA: interference[2] and retaliation. 29 U.S.C. §§ 2615(a)(1), (2). Interference occurs when an employer denies or interferes with an employee's FMLA rights. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). Retaliation occurs when the employer discriminates against an employee for asserting her FMLA rights,

---

[2] What are oftentimes referred to as "interference" claims may also be referred to as "entitlement" claims, as noted in *Bosley v. Cargill Meat Solutions Corp.*, ___ F.3d ___, 2013 WL 425354 (8th Cir. 2013). Because the parties referenced Jones's claim as an interference claim in their briefs, the court will use the same terminology.

because an employer may not consider an employee's use of FMLA leave as a negative factor in making an employment decision. *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). Jones alleges both interference and retaliation. Before addressing each claim separately, the court first analyzes Bracco's argument that Jones's FMLA claims fail because she failed to provide adequate notice to Bracco that she was taking FMLA leave.

### A. Notice Under the FMLA

"A claim under the FMLA cannot succeed unless the plaintiff can show that [s]he gave [her] employer adequate and timely notice of [her] need for leave[.]" *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005). The plaintiff must provide her employer "with enough information to show that [s]he may need FMLA leave." *Id.* at 990. The plaintiff need not name the statute, but she must "provide information to suggest that [her] health condition could be serious." *Id.* "Employees thus have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position." *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 786 (8th Cir. 2009) (citing *Woods*, 409 F.3d at 990-91). "Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury." *Clinkscale v. St. Therese of New Hope*, 701 F.3d 825, 827 (8th Cir. 2012) (citing *Phillips*, 547 F.3d at 909 (8th Cir. 2008)).

In determining whether sufficient notice was given, one must "look at the totality of the surrounding circumstances." *Scobey*, 580 F.3d at 787 (citing 29 C.F.R. § 825.303(b)). On August 26, 2009, Jones appeared light headed while she was at work. Her appearance was disconcerting to the extent that Adams recommended that she go to the emergency room, which she did. Jones's husband returned to Bracco that evening with a note from Dr. Simpkins, indicating that Jones should only return to work on September 1, 2009, after she was cleared by neurology. This incident was in addition to previous communications between Jones and other management at Bracco. On August 12, 2009, Jones emailed Thompson, Oberembt, and Adams, stating that her doctor would be providing them with a letter to support a two-week medical absence as a result of her brain tremors, faintness, and pain on the right side of her head. Although Jones did not take a two-week absence at that time, such communications go to the issue of whether Jones provided adequate notice.

After receiving the August 26 note from Dr. Simpkins, Bracco was aware that Jones would not be returning to work until September 1, 2009, assuming she was cleared by neurology. Jones had already alerted Bracco to her issues with brain tremors, faintness, and pain on the right side of her head. Further, Bracco was aware that Jones had gone to the emergency room following a faintness episode that occurred at work. Thus, when considering the totality of

the circumstances, there exists a question of material fact as to whether Bracco was on notice of Jones's potentially FMLA-qualifying leave prior to its determination to terminate her employment. *See Phillips*, 547 F.3d at 910-11 (finding there was a genuine issue of material fact whether notice was adequate where employer knew that employee needed time off for a doctor's visit relating to a recent accident); *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 852 (8th Cir. 2002) (finding there was a genuine issue of material fact whether employee's statement that she needed to miss work due to "depression again" was adequate notice where employer knew that employee's condition had required previous absences).

### B.  Interference Under the FMLA

Bracco argues that Jones has failed to state a valid claim for interference under the FMLA. "An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise[] of any right contained in the FMLA." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). Interference may also include discharging an employee while she is on FMLA leave because once on FMLA leave, an employee has the "right to restoration upon completion of the

leave." 29 U.S.C. § 2614(a)(1)(A); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977-78 (8th Cir. 2005). But the "FMLA does not require an employer to retain an employee on FMLA leave if that employee has no right to return to work." *Throneberry*, 403 F.3d at 978; *see also* 29 U.S.C. § 2614(a)(3)(B) (taking FMLA leave does not entitle the employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave"). "[I]f an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge." *Throneberry*, 403 F.3d at 978.

Here, Jones has presented evidence to show that the decision to terminate her happened while she was on FMLA leave, thus interfering with her FMLA rights. *See Phillips*, 547 F.3d at 911 (noting that "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights"). The issue then is whether Bracco's decision to terminate Jones would have been made regardless of whether she took FMLA leave. Bracco has the "burden of proving that [Jones] would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration." 29 C.F.R. § 825.216(a)(1); *Throneberry*, 403 F.3d at 978-79 ("As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the

employer will be justified to interfere with an employee's FMLA leave rights."). Bracco claims that Jones was discharged because she failed to adequately manage and train staff, ensure menus and training manuals were updated, attend meetings, and maintain a clean restaurant. Bracco also claims that Jones was unwilling to work the hours her position demanded. These proffered reasons would likely qualify as justified interference with Jones's FMLA rights. The problem lies, however, in the fact that Bracco has not provided any evidence that these alleged deficiencies in Jones's work are anything more than post hoc rationalizations. For example, both Rick and Dave Thompson testified that they rarely, if ever, discussed any performance issues with Jones. There are no write-ups in Jones's personnel file for deficient job performance issues. Bracco admits that it did not follow its general three-strike disciplinary program that is spelled out in its employee handbook with respect to Jones's discharge.[3] Moreover, Bracco did not indicate performance issues as the reason for Jones's termination in ether its phone call to Jones or her termination letter. As a result, a question of fact exists as to whether Jones would have been laid off regardless of whether she took FMLA leave. Consequently, Bracco is not entitled to summary judgment on Jones's FMLA interference claim.

---

[3] The court does not hold that Bracco was required to follow its three-strike program. Not following the program is relevant, however, because it supports Jones's accusations that Bracco terminated her for asserting her FMLA rights.

## B.  Retaliation Under the FMLA

"The FMLA prohibits employers from discriminating against an employee for asserting [her] rights under the Act." *Stallings*, 447 F.3d at 1051. Basing an adverse employment action, such as termination, on an employee's use of leave is actionable under the FMLA. *Id.*  An employee can prove FMLA retaliation with direct evidence or circumstantial evidence under the *McDonnell Douglas* burden-shifting analysis. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). Jones does not allege that she has direct evidence of discrimination, but rather she presents indirect evidence. Under the *McDonnell Douglas* framework, Jones must make a three-part showing that: (1) she exercised rights afforded to her under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between her exercise of rights and the adverse employment action. *Id.* If Jones meets this prima facie showing, the burden shifts to Bracco to show that it had a legitimate, nondiscriminatory reason for its actions. *Id.* The burden then shifts back to Jones to show Bracco's proffered reasons are mere pretext. *Id.*

### 1.  Prima Facie Case of Retaliation

Bracco argues that Jones has failed to establish a prima facie case of retaliation under the FMLA. To establish her prima facie case of retaliation, Jones must show that (1) she exercised rights afforded to her under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal

13

connection between her exercise of rights and the adverse employment action. *Phillips*, 547 F.3d at 912. Jones has presented evidence that she was on FMLA protected leave at the time her termination was decided, establishing the first prong of Jones's prima facie case. Termination is certainly an adverse employment action, establishing the second prong. As a result, the only issue that remains is whether Jones has established a causal connection between her FMLA leave and her termination.

"To establish a causal link between the employee's exercise of FMLA rights and her termination, the employee must prove that an employer's retaliatory motive played a part in the adverse employment action." *Hite*, 446 F.3d at 865 (internal quotations omitted). A causal link can be established through the timing of the two events. *Id.* at 866. Temporal proximity alone may be sufficient to create an inference of the causal link when said temporal proximity is very close. *Id.* Here, Jones put Bracco on notice that she was taking FMLA leave on August 26, 2009, when her husband delivered Dr. Simpkins's letter that evening. Jones received a phone call from Bracco on August 28, 2009, a mere two days later, informing her that she was to be terminated following her medical leave. The court concludes that such close temporal proximity creates an inference of a causal connection between her FMLA leave and Bracco's decision to terminate her. Accordingly, Jones has established her prima facie case of retaliation under the FMLA.

## 2. Nondiscriminatory Reasons for Jones's Termination

Because Jones has made her prima facie showing, the burden shifts to Bracco to show that it had a legitimate, nondiscriminatory reason for terminating Jones. *Hite*, 446 F.3d at 865. As noted above, Bracco claims that Jones was discharged because she failed to adequately manage and train staff, ensure menus and training manuals were updated, attend meetings, and maintain a clean restaurant. Bracco also claims that Jones was unwilling to work the hours her position demanded. Thus, Bracco has put forth legitimate, nondiscriminatory reasons for its actions.

## 3. Pretext

Because Bracco has met its burden, Jones must "point to some evidence that the employer's proffered reasons [are] pretextual." *Id.* at 867. The Eighth Circuit Court of Appeals has recognized a handful of methods used to show pretext:

> An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before [s]he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

*Phillips*, 547 F.3d at 913 (quoting *Stallings*, 447 F.3d at 1052). Two of these methods are applicable here.

15

First, Jones argues that Bracco's proffered reasons, i.e., issues with deteriorated job performance, have no basis in fact. The record is void, with the exception of post-litigation testimony, of any evidence that Jones's job performance was in any way deficient. There are no write-ups or other disciplinary comments in Jones's personnel file. Bracco did not indicate that Jones's job performance was the reason for her termination in either the phone call or letter to Jones. Moreover, Jones's superiors testified that they rarely, if ever, discussed performance issues with Jones. Thus, there exists a question of fact as to whether Bracco's proffered reasons for Jones's termination have a basis in fact.

Second, Jones notes that Bracco deviated from its policies. In terminating Jones, Bracco did not utilize its general three-strike disciplinary policy that is outlined in its employee handbook. Again, the court does not hold that Bracco was required to follow its three-strike program. But by not following its "general" policy, there is a question of material fact as to whether Bracco deviated from its standard policies. Thus, Jones has pointed to "some evidence" that Bracco's proffered reasons are pretext. *Hite*, 446 F.3d at 865. As a result, summary judgment will not be granted to Bracco on Jones's FMLA retaliation claim.

### C. Bracco's Failure to Provide FMLA Notice

Bracco argues that Jones cannot assert a cause of action against it for failing to notify her of FMLA protections. In her complaint, however, Jones does not plead a claim against Bracco for failing to notify. Jones's brief simply notes that Bracco's failure to inform her of her FMLA protections prejudiced her because she did not have the "information necessary to avail herself of the protections under the FMLA." Docket 25 at 10 (noting prejudice is a prerequisite to relief under the FMLA). Whether Bracco properly informed Jones of her FMLA rights is of little importance for this summary judgment motion. Jones's termination is all that is necessary to establish the required adverse employment action in support of her FMLA claims of interference and retaliation.

In summary, Jones has demonstrated that genuine issues of material fact exist with regard to her FMLA claims of interference and retaliation. Accordingly, summary judgment will not be granted to Bracco on Jones's FMLA claims.

## II.     Americans with Disabilities Act

Jones alleges two separate claims under the ADA:[4] discriminatory disparate treatment and failure to make a reasonable accommodation. Each claim must be analyzed separately. *Fenney v. Dakota, Minnesota & Eastern R.R. Co.*, 327 F.3d 707, 712 n.6 (8th Cir. 2003).

### A.  Discriminatory Disparate Treatment

A plaintiff can prove a discrimination claim under the ADA with either direct or indirect evidence. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998). Jones does not allege direct evidence, but rather relies on indirect evidence. The *McDonnell Douglas* burden-shifting analysis is used to analyze a case of discrimination based on indirect evidence under the ADA. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

To make a prima facie case of discrimination under the ADA, an employee must make three showings: (1) that she has a disability as defined in the Act; (2) that she is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) that she has suffered an

---

[4] Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009. ADA Amendments Act (ADAAA) of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). The ADAAA "broadened the definition of what constitutes a disability[.]" *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010). The ADAAA is applicable here because the events involved occurred in the summer of 2009.

adverse employment action on the basis of her disability.[5] 42 U.S.C. § 12112(a); *see also Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1016 (8th Cir. 2000). If Jones makes this showing, the burden shifts to Bracco to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Young*, 152 F.3d at 1021. If Bracco makes this showing, the burden shifts back to Jones to show that Bracco's proffered reasons are merely pretext for discrimination. *Id.*

### 1. Prima Facie Case of Discrimination Under the ADA

#### a. Disability Under the ADA

Bracco argues that Jones is not disabled under the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under Section A, a person has an actual disability if "[s]he has (1) a physical or mental impairment that (2) substantially limits one or more major life activities of the individual." *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1094 (8th Cir. 2007) (internal quotation omitted). The Equal Employment Opportunity Commission (EEOC), which issues regulations implementing the

---

[5] As a result of the ADAAA, the causation element was amended to prohibit an employer from discriminating against a qualified individual "on the basis of disability" as opposed to the previous prohibition against discrimination "because of the disability."

ADA, defines physical impairment as any physiological disorder or condition affecting one or more of the body systems such as the neurological, musculoskeletal, special sense organs, respiratory, or cardiovascular systems. 29 C.F.R. § 1630.2(h)(1); *see also Otting v. J.C. Penney Co.*, 223 F.3d 704, 708 (8th Cir. 2000).

To qualify as a disability under the ADA, the impairment must substantially limit the "ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, concentrating, thinking, interacting with others, walking, seeing, speaking, breathing, and working. 29 C.F.R. § 1630.2(i)(1)(i); *see also Wenzel v. Mo.-Am. Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005).

Jones was diagnosed with trigeminal neuralgia (TN) on September 1, 2009. Before Bracco's termination decision, Jones experienced the following symptoms: sensations that her brain was vibrating; numbness on the side of her face; shooting pains through her eyes; constant headaches; muscle spasms in her face; and a feeling that she might pass out at any time. Jones claims that her symptoms from what was later diagnosed as TN qualify as a physical

impairment because they constitute a physiological condition that affects the body's neurological system. Bracco does not dispute whether Jones's symptoms qualify as a "physical impairment" under the ADA, and thus, the court assumes, for purposes of this motion, that they do.

Instead, Bracco argues that Jones has not shown that her physical impairment caused one or more of her major life activities to be substantially limited. Jones claims that her symptoms substantially limit her ability to perform manual tasks, concentrate, interact with others, and think. In passing the ADAAA, Congress mandated that the definition of disability under the ADA "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4). In light of the recent directive from Congress, the court concludes that Jones's deposition testimony is enough to create a question of fact as to whether Jones was substantially limited in her ability to perform a major life activity and, therefore, disabled under the ADA. *See Seim v. Three Eagles Commc'ns, Inc.*, No. 09-CV-3071-DEO, 2011 WL 2149061, at *3 (N.D. Iowa June 1, 2011) (concluding that plaintiff's affidavit and deposition testimony were enough to create a question of material fact).

### b.   Qualified to Perform Essential Functions

To satisfy the second element of the prima facie test, Jones must first show that she "meets the necessary prerequisites for the job, such as

education, experience, and training," and second, that she "can perform the essential job functions, with or without reasonable accommodation." *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 674 (8th Cir. 2001) (citing *Land v. Wash. Cnty., Minn.*, 243 F.3d 1093, 1095 (8th Cir. 2001)). Jones satisfies the first prong by virtue of having previously held the position. *Id.* Moving to the second prong, essential functions of the job are the "fundamental job duties." *Duello v. Buchanan Cnty. Bd. of Supervisors*, 628 F.3d 968, 972 (8th Cir. 2010). While Jones must present evidence that she is qualified, Bracco must first identify the fundamental job duties. *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 990 (8th Cir. 2007).

Bracco's sole argument relating to whether Jones was qualified to perform the essential functions of the job is that Jones's work performance failed to meet Bracco's legitimate job expectations, and thus, she was not qualified to perform the essential functions of the job. *See Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) ("Under the ADA, a plaintiff must show that his work performance met the employer's legitimate job expectations.") (internal quotations omitted). As discussed before, there exist questions of fact regarding the quality of Jones's work performance leading up to Bracco's decision to terminate her. Other than Bracco's accusations, which Jones disputes, there is nothing in the record that shows Jones's work performance was less than satisfactory. Thus, because Bracco's only argument

was that Jones failed to meet legitimate job expectations, there exists a question of fact as to whether Jones was qualified to perform the essential functions of the job.

### c. Adverse Employment Action on the Basis of Disability

Under the third element, Jones must show that she "suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012). Specifically, "the disability must be a motivating factor in the employer's decision for the adverse action." *Chalfant*, 475 F.3d at 991. Here, the decision to terminate Jones occurred soon after she had Dr. Simpkins's letter delivered to Bracco. The letter indicated that Jones needed time off because of her physical impairments. The timing of Bracco's decision to terminate Jones combined with Bracco's failure to provide Jones with any reason for its termination in either the phone call or letter to Jones are enough that a reasonable jury could conclude that Jones's disability was a motivating factor in Bracco's termination decision. *See id.* (determining that when an employer proffers its non-discriminatory reasons for its adverse action only after litigation begins is enough to create a question of fact). Thus, Jones has established her prima facie case of discrimination under the ADA.

## 2. Nondiscriminatory Reasons and Pretext

The court's previous discussion relating to Bracco's nondiscriminatory reasons for terminating Jones and whether they are pretext is equally applicable to Jones's ADA claim as it is to her FMLA claim. To reiterate, Jones has put forth evidence to establish a question of fact as to whether Bracco's proffered nondiscriminatory reasons were false, thus allowing an inference of discrimination. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003 (8th Cir. 2012) (noting that, in an ADA case, it is "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation" so long as the employee proves that the "employer's explanation was false"). Thus, summary judgment will not be granted to Bracco on Jones's discriminatory disparate treatment claim under the ADA.

## B. Failure to Make Reasonable Accommodation

Jones also alleges that Bracco discriminated against her because it failed to make a reasonable accommodation in violation of the ADA. An employer's failure to make a reasonable accommodation to a disabled employee is a form of prohibited discrimination under the ADA. *Fenney*, 327 F.3d at 711 ("The ADA mandates that companies . . . provide reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee[.]"). A failure to accommodate claim is analyzed under a "modified burden-shifting analysis" as opposed to the *McDonnell Douglas*

burden-shifting analysis. *Id.* at 712. Under the modified burden-shifting

analysis, Jones must make a facial showing that she has an ADA disability, has

suffered an adverse employment action, and is a qualified individual.[6] *Id.* A

qualified individual must possess the requisite skill, education, experience, and

training for her position and be able to perform the essential job functions, with

or without reasonable accommodation. *Id.* If the employer disputes that the

employee is able to perform the essential job functions, then the burden shifts

to the employer to put on evidence of the essential job functions. *Id.*

> Further, if the employee cannot perform the essential functions of
> the job *without* an accommodation, [s]he must only make a facial
> showing that a reasonable accommodation is possible. The burden
> of production then shifts to the employer to show that it is unable
> to accommodate the employee. If the employer can show that the
> employee cannot perform the essential functions of the job even
> with reasonable accommodation, then the employee must rebut
> that showing with evidence of h[er] individual capabilities. At that
> point, the employee's burden merges with [her] ultimate burden of
> persuading the trier of fact that [s]he has suffered unlawful
> discrimination.

*Fenney*, 327 F.3d at 712 (internal quotations and citations omitted).

The court need not delve deep into the modified burden-shifting analysis

because Bracco has only raised one issue specific to Jones's failure to

---

[6] For the modified burden-shifting analysis, Jones does not need to make a prima facie showing that the adverse employment action was the result of intentional discrimination. Instead, the discrimination occurs when the employer fails to abide by the legally imposed duty of providing a reasonable accommodation. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

accommodate claim[7]— whether Jones gave Bracco sufficient notice of her disability and request for accommodation.

An employer has no duty to accommodate if the employee fails to make a request for an accommodation. *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008). Where the "disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . *the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.*" *Rask v. Fresenius Med. Care North Am.*, 509 F.3d 466, 470 (8th Cir. 2007). Jones provided notice to Bracco that she needed a five-day leave of absence by having her husband hand deliver Dr. Simpkins's letter. Prior to receiving the letter, Adams observed Jones while she was light-headed and recommended that she go to the emergency room, which she did. Moreover, approximately two weeks before this incident, Jones informed management at Bracco that she needed a two-week medical absence due to similar symptoms, although she did not take the leave. Based on these circumstances, there is a question of fact as to whether Jones provided sufficient notice of her disability and need for an accommodation.

---

[7] As discussed above, Jones established a prima facie case under the ADA.

Jones made a prima facie showing of her ADA claims for disparate treatment and failure to accommodate. Further, Jones established a factual question as to whether she provided sufficient notice to Bracco to maintain her failure to accommodate claim. Therefore, summary judgment will not be granted to Bracco on Jones's ADA claims.

## III.    **Wrongful Termination**[8]

Jones also alleges a claim for wrongful termination. South Dakota is an employment at-will state, meaning an employee can be terminated with or without cause. *Anderson v. First Century Fed. Credit Union*, 738 N.W.2d 40, 45 (S.D. 2007). "The potentially harsh effects of the at-will doctrine have been tempered in South Dakota by the adoption of the public policy exception." *Dahl v. Combined Ins. Co.*, 621 N.W.2d 163, 166 (S.D. 2001). To assert the public policy exception, Jones must show that the "motivation for termination contravenes a clear mandate of public policy." *Id.*

The South Dakota Supreme Court recognized the public policy exception to the at-will doctrine when an employee was fired in retaliation for filing a worker's compensation claim. *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781, 783 (S.D. 1993). The Supreme Court concluded that public policy requires that

---

[8] The parties do not dispute that Jones's claims for wrongful termination and intentional infliction of emotional distress are governed under South Dakota law. Thus, the court will apply South Dakota law while analyzing Jones's state-law claims.

"workers injured in the course of employment be compensated without interference." *Id.* at 784.

Jones argues that her dismissal in retaliation for asserting her FMLA and ADA rights similarly falls under South Dakota's public policy exception to its at-will doctrine. Substantial public policies are "found in the letter or purpose of a constitutional or statutory provision or scheme[.]" *Id.* at 783. SDCL 20-13-10 provides that it "is unfair or discriminatory practice for any person, because of . . . disability, . . . to discharge an employee[.]" In other words, South Dakota public policy articulates that it is unfair for an employee to be terminated because of her disability. Therefore, the court finds that the South Dakota Supreme Court would recognize that the public policy exception to the at-will doctrine includes a cause of action for wrongful discharge if the discharge is in retaliation for asserting ADA rights.

Combining this rationale with the rationale applied in *Niesent*, the court also finds that the South Dakota Supreme Court would recognize that the public policy exception to the at-will doctrine includes a cause of action for wrongful discharge if the discharge is in retaliation for asserting FMLA rights. Generally, there is a strong public policy in South Dakota not to treat an employee unfairly because of some immutable characteristic. *See* SDCL 20-13-10 (including race, color, creed, religion, sex, ancestry, disability, and national origin as criteria that cannot be used in making employment decisions).

Furthermore, there is a strong public policy in South Dakota to ensure that employees injured on the job can "retain their livelihood." *Niesent*, 505 N.W.2d at 784 ("Employees injured on the job should not have to forfeit their right to compensation in order to retain their livelihood."). A claim for wrongful discharge that alleges retaliation for asserting FMLA rights combines these two public policies: it is unfair for an employee to be terminated (and thus lose her livelihood) when she is struck with a serious illness (something out of her control) and requires a short leave. Thus, the court finds that the South Dakota Supreme Court would recognize this public policy exception to the at-will doctrine.

Bracco argues that if Jones is not entitled to protection under the FMLA and the ADA, then her wrongful discharge claim must also fail. But Jones has established that her FMLA and ADA claims do not fail at this stage in the litigation. Therefore, the court will not grant summary judgment to Bracco on Jones's wrongful discharge claim.

## IV.    Intentional Infliction of Emotional Distress

To make a prima facie showing of intentional infliction of emotional distress, Jones must show, among other things, that Bracco acted in a manner that was extreme and outrageous. *Anderson*, 738 N.W.2d at 51. The conduct must be so outrageous in character and "so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly

intolerable in a civilized community." *Richardson v. E. River Elec. Power Coop., Inc.*, 531 N.W.2d 23, 27 (S.D. 1995). The appropriate conduct to consider is Bracco's conduct that occurred during the actual termination. *Id.* at 28-29.

Jones has not presented sufficient evidence to show that Bracco's actions were extreme and outrageous. Bracco originally notified Jones of her termination by way of a phone call. She has not alleged that voices were raised, profanity was used, or that the environment was hostile. Indeed, the phone call was a one-on-one conversation in which Jones was told that she would be put on medical leave for one month before her position would terminate and that she "needed to send all materials, keys and all of that, to Bracco." Docket 26-1 at 17. Jones subsequently received a letter outlining the same. Bracco's conduct was civilized. *See Richardson*, 531 N.W.2d at 29 (finding similar conduct by an employer to be civilized, "if not particularly pleasant" for the plaintiff). Therefore, Jones has failed to present sufficient evidence to support her claim for intentional infliction of emotional distress.

## CONCLUSION

Bracco moved for summary judgment on Jones's FMLA, ADA, wrongful termination, and intentional infliction of emotional distress claims. Jones established that genuine issues of material fact exist with respect to her FMLA, ADA, and wrongful termination claims. Jones, however, failed to present

sufficient evidence to support her claim for intentional infliction of emotional distress. Accordingly, it is

ORDERED that defendant's motion for summary judgment (Docket 16) on plaintiff's FMLA, ADA, and wrongful termination claims is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiff's intentional infliction of emotional distress claim is granted.

Dated February 26, 2013.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE